IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 2:14-00135-KD-N |
| | ) | |
| WESLEY TUBBS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on Defendant Wesley Tubbs' emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or for home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621) (doc. 779),[1] the United States' response (doc. 783), Tubbs' reply (doc. 789),[2] letters in support (doc. 784 (under seal)[3], docs. 793, 796, 800),[4] supplement to the motion (doc. 794),[5] and the United States' notice (doc.

---

[1] Tubbs' daughter and mother sent letters in support of his motion (docs. 780, 797). Tubbs' accuser in a 1994 sexual assault action sent an affidavit signed in 2001, wherein she recanted her allegations against him, and again states that Tubbs did not commit the crime (doc. 787).

[2] Tubbs' motion for extension of time to file a reply (doc. 786) is GRANTED.

[3] The information contained in this sealed document has been reviewed.

[4] Tubbs states that as of June 2020 he had not tested positive but the increased number of inmates testing positive at FCI Oakdale I is evidence that the Bureau of Prisons "cannot effectively protect its inmate population from exposure" (doc. 793).  He also reports his current conditions of confinement – limited time outside, sandwiches for meal, and general tension because the inmates fear contracting Covid-19. (Id.).  He provides copies of his Inmate Skills Development Plan, which indicate he has not received any disciplinary infractions (doc. 794). Tubbs' February 2020 Program Review shows that he has completed thirteen educational courses covering topics such as building maintenance, career planning, and "Inside Out Dad", and that he started a commercial drivers' license course in October 2019 (doc.  794, p. 27).  Tubbs states that he has a job with a construction company upon release (doc. 796). Tubbs reports that he needs certain tests and adjustments to his medication, but these medical services have not been provided (Id.).

798). Upon consideration, and for the reasons set forth herein, the motion for compassionate release is DENIED and the motion for home confinement is DENIED.

I. Background

Prior to his June 2014 arrest in this action, Tubbs had been convicted of several criminal offenses. In 1990, he was convicted of escape in the Perry County, Alabama Circuit Court. That same year, and also in Perry County, he plead guilty to attempt to possess cocaine.   In 1994, also in Perry County, he pled guilty and was convicted of rape second degree.

In 1997, Tubbs was indicted in this court for five drug related offenses. United States v. Tubbs, Criminal Action No.  2:97-00118-WS-M (S.D. Ala. 1997).  He pled guilty to conspiracy to possess with intent to distribute cocaine and crack cocaine. In October 1998, he was sentenced to a total term of 67 months. Tubbs' supervised release began October 2002.  However, his release was revoked in March 2004, and he was sentenced to 60 months (Id., docs. 36, 48). Tubbs was alleged to have committed technical violations and one new offense (Id). Specifically, he was arrested by the Selma Police Department for possession of cocaine and drug paraphernalia in December 2003.  Tubbs was released from his revocation sentence in July 2008.

At the time of his arrest in this action, June 18, 2014, Tubbs was the lead defendant in an 18-defendant, 31-count Indictment charging drug-trafficking and money laundering offenses including three forfeiture allegations.  He also had charges pending in the Jefferson County, Alabama Circuit Court (2012) and Perry County, Alabama District Court (2013).

---

Recently, Tubbs reports that there is "no way to social distance", that the prison staff incorrectly administers the Covid-19 test, and there is an increase in the number of inmates testing positive (doc. 800).  He also states that release is a matter of life or death because of his medical conditions (Id.).  In three of his letters, Tubbs asks the Court to not let him die in prison from Covid-19 (docs. 779, p. 7-8; 796, 800). He states that he has learned his lesson and will never break the law again (docs. 779, p. 7-8; 800).

Tubbs was indicted and charged for one count of conspiracy to possess with intent to distribute crack cocaine, cocaine, and marijuana; two counts of attempt to distribute cocaine; three counts of attempt to distribute marijuana; one count of conspiracy to commit money laundering; and one count of food stamp fraud. He pled guilty to conspiracy to possess with intent to distribute controlled substances and money laundering conspiracy (Counts 1 and 27). At sentencing, his total offense level was 33 and his advisory Sentencing Guidelines range was 151 to 188 months. His criminal history category was II. However, Tubbs was subject to a mandatory minimum of 240 months as to Count 1. In September 2015, he was sentenced to serve 250 months as to each count, concurrent. A variance sentence outside the advisory guidelines range was imposed as to both counts. His conviction and sentences were affirmed on appeal (docs. 723, 726). Tubbs is now 51 years old. He is incarcerated at FCI Oakdale 1 at Oakdale, Louisiana. His release date is March 19, 2032.

II. Exhaustion

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)". The Court may do so upon finding that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the

---

[5] Tubbs' motion to supplement (Doc. 794) is GRANTED.

[United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

In his emergency motion signed April 13, 2020, Tubbs did not allege that he met either statutory exhaustion requirement (doc. 779). The United States argues that the Court lacks jurisdiction to decide Tubbs' motion and therefore, the motion should be dismissed without prejudice to refiling after he has exhausted his administrative remedies (doc. 783, p. 13-21).

In his reply, Tubbs concedes that he filed his motion five days after he initiated the administrative remedy process by sending a request to the Warden on April 8, 2020 (doc. 789, p. 2-3). He argues that the rise in deaths from Covid 19 at FCI Oakdale 1 and the lack of an adequate response by the Warden (which led to the Warden's removal) necessitated an immediate emergency motion. Tubbs argues that the Court should waive the exhaustion requirement because requiring exhaustion would be futile, the administrative process would be incapable of granting adequate relief, and seeking relief through the administrative process is unduly prejudicial (Id., p. 3-4). Tubbs argues that these elements are met because denying immediate release and requiring administrative exhaustion, results in continued exposure to the Covid 19 virus which could result in catastrophic health consequences (Id. p. 4-5). Importantly, Tubbs provides the Warden's response to his Inmate Request to Staff Member, which was received on April 8, 2020 ((Id., p. 6. Exhibit D, p. 56-58). Tubbs had requested compassionate release as a result of the Covid-19 pandemic and his current health issues. (Id., p. 6. Exhibit D, p. 56-58). The Request was denied on May 15, 2020. (Id.).

More than 30 days has now passed since Tubbs' request was received by the Warden as evidenced by the denial notice. Although Tubbs did not strictly adhere to the statute, instead filing his motion before the requisite time period passed, see 18 U.S.C. § 3582(c)(1)(A), the

Court sees no reason to dismiss the motion without prejudice with leave to refile.  See United

States v. Skaff, 2020 WL 3490074, at *1 (S.D.W. Va. June 25, 2020) ("Although Mr. Skaff

petitioned the court on June 4, 2020, before 30 days had passed since the Warden's receipt, I find

it would be a waste of judicial resources to have Mr. Skaff refile the motion now that 30 days

have elapsed since the Warden's receipt of the compassionate release request."); United States v.

Blake, No. 15-CR-80018, 2020 WL 4677309, at *4 (S.D. Fla. Aug. 12, 2020) (same).

    III. Compassionate release

    Once a sentence is imposed, the "authority of a district court to modify an imprisonment

sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th

Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).

Specifically, the "court may not modify a term of imprisonment once it has been imposed

except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730,

(11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

    The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the

Court "may reduce the term of imprisonment (and may impose a term of probation or supervised

release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if

the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the

reduction is "consistent with applicable policy statements issued by the [United States]

Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

    "Extraordinary and compelling" reasons are not defined in the statute.  Instead, Congress

gave the Sentencing Commission the duty to promulgate general policy statements regarding

sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission

"shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

Before the First Step Act, the Sentencing Commission promulgated the following Policy Statement, which set forth in relevant part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A)[6]  Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction of sentence under § 3582(c)(1)(A).  Tubbs' alleged

---

[6] Subparagraph (1)(B) applies to prisoners who are 70 years or older.  Since Tubbs is 51 years old, this Policy Statement does not apply.  Also, Tubbs has served approximately 72 months of a 250-month sentence, or approximately 30%.  The Policy Statement indicates that when release has been granted, defendants have served a longer sentence or longer percentage of their sentence.  See 18 U.S.C. § 3582(c)(1)(B) (potential for compassionate release where defendant is at least 70 years of age and has served at least 30 years in prison); U.S.S.G. 1B1.13, cmt. 1(B) (possible compassionate release where defendant is at least 65 years old; experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.).

reasons fall under two examples found in Application Notes 1(A)(ii)(I)[7] and (D) (docs. 779, 789).  Specifically, Tubbs argues that he "is unable to provide self-care within this environment being housed at [FCI Oakdale 1] in light of the ongoing Covid-19 pandemic because the Petitioner is unable to practice effective social distancing and clean hygiene to minimize the risk of exposure" (doc. 779, p. 3).  Tubbs points to the documented Covid-19 outbreak at FCI Oakdale 1, the dormitory-like conditions which he shares with "over 200 other inmates", and the Warden's inability to control the outbreak and protect the inmates and staff (Id., p. 3-4; doc. 789, p. 5, 16). Tubbs alleges that he is 51 years old and at high risk of serious illness or death from Covid-19 because of his illnesses, hypertension, heart disease, kidney disease, cholesterol, bleeding ulcers, acid reflux, and borderline diabetes (doc. 779, p. 7; doc. 789, p. 13).

Application Note 1(A)(ii) provides that a defendant's physical or medical condition may qualify if certain criteria are met. Specifically, if the defendant is -

(I) suffering from a serious physical or medical condition, . . .

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A).[8]

---

[7] Application Note 1(A)(i) provides that where the "defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" without a specific prognosis of death, as an example of an extraordinary and compelling reason to consider compassionate release. U.S.S.G. § 1B1.13 cmt. n. 1(A).  The Sentencing Commission included "end-stage organ disease". Id.  However, there is no evidence that Tubb's chronic kidney disease has reached end-stage.  Tubbs' "Current Care Assignment" is at Care Level 2 for "Stable, Chronic Care" (doc. 794, p. 27, Individualize Reentry Plan – Program Review, February 27, 2020).

[8]  Tubbs does not allege that he is "suffering from a serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process[.]" U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)II & III.

Application Note 1(D), provides that the Court may consider "Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. §1B1.13 cmt. n. (1)(D).   In its present version, Application Note 1(D) "leaves identification of other 'extraordinary and compelling reason[s]' to the Director of the Bureau of Prisons." United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at * 3 (D. Me. July 11, 2019).  But now that the First Step Act allows the inmate to move for compassionate release without the BOP's support, it is unclear what "other" reasons can be relied upon for compassionate release.  However, the Court finds that until the Sentencing Commission amends its Policy Statement "those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release." United States v. Fox, 2019 WL 3046086, at *3.

The United States filed an update stating that the evidence shows Tubbs has chronic kidney disease and that

> the United States now agrees that, during the Covid-19 pandemic, chronic kidney disease presents a 'serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the defendant's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished by this chronic medical condition and sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c).

(Doc. 798) (citing Centers for Disease Control, At Risk for Severe Illness, available at

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html)[9]

Even if Tubbs has met his burden to show extraordinary and compelling reasons, the

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

Court may grant a reduction of sentence for early release only "after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)" 18 U.S.C. § 3582(c)(1)(A).  In that regard, Tubbs argues that had Covid 19 existed at the time of sentencing, the Court would have considered a "harsh conditions" departure (doc. 789, p. 18).  He argues that "[a]lthough the circumstances of the present offense qualified the Petitioner for the serious sentence that this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness" (doc. 789, p. 18).  Tubbs also argues that his conduct while in prison, specifically the absence of disciplinary infractions and his educational achievements, "establishes that the purposes of punishment have been met" and that he "no longer poses a threat to public safety" such that his release would not "endanger the community" (Id., p. 18-19).

Tubbs argues that upon consideration of the § 3553(a) factors along with the approximately seven years he has served and his rehabilitation efforts, the Court should reduce his sentence to time served followed by house arrest for an extended term, probation for the remainder of his unserved sentence, and then previously imposed ten year term of supervised release (doc. 789, p. 17, 19).   He argues that this reduced sentence with conditions of release is "sufficient, but not greater than necessary, to serve the purposes of sentencing under § 3553(a)" (Id., p. 19).

The United States opposes Tubbs' motion on basis that the relevant factors in 18 U.S.C. § 3553(a) weigh against a reduction in sentence. The United States point out that Tubbs was the mastermind of an extensive drug-distribution and money laundering conspiracy involving large amounts of cocaine, crack cocaine, and marijuana transported between Texas and Alabama (doc.

---

ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (last revised July 17, 2020) ("Having chronic kidney disease of any stage increases your risk for severe illness from COVID-19.").

783, p. 2-3, 24-25).  The United States argues that Tubbs' 250-month sentence "is fair and appropriate, especially considering his long history of felony convictions" (Id., p. 25).

The Court has considered Tubbs' argument that he is no longer a danger to the community, and his letters stating he has learned his lesson and will not break the law again if he is released (doc. 779, p. 7-8; doc. 800).  The Court has also considered his commendable absence of a disciplinary record and many educational accomplishments while incarcerated.  The Court also acknowledges Tubbs' fear that he will contract Covid 19 and die in prison.

However, the Court has considered the "nature and circumstances" of Tubbs' offenses and finds that this factor does not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1).  Tubbs was involved in a major drug conspiracy that brought a large quantity of drugs over a period of approximately four years into Marion, Alabama.  Also, Tubbs' "history and characteristics" do not weigh in favor of a sentence reduced to time served. Id. Tubbs had been incarcerated at least four times before he committed the instant offense.  Importantly, he served 67 months for conspiracy to possess with intent to distribute cocaine and crack cocaine (doc. 460).  Then after he was released, Tubbs committed another drug-related violation, and his term of supervision was revoked (Id.).  Tubbs served another 60 months sentence for the revocation and was released in 2008.  Despite serving two lengthy sentences in federal prison, Tubbs again engaged in drug trafficking which led to the offenses of conviction in this action.

In this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1) and (a)(2)(A), (B), & (C).  Accordingly, Tubbs' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED.

10

IV.  CARES Act

Tubbs asks the Court to grant his motion "so that he can be placed in home confinement

so that he can self-quarantine" (doc. 779, p. 5) and in his first letter, Tubbs states that he "will

take home confinement" if he is released from prison (Id., p. 8). To the extent that Tubbs moves

for release to serve the remainder of his sentence on home confinement pursuant to the

Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, §

12003(b)(2), 134 Stat. 281, 516, his motion is DENIED.

Previously, under 18 U.S.C. § 3624(c)(2), the Bureau of Prisons had authority to "place a

prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that

prisoner or 6 months."   Under the CARES Act, effective March 27, 2020, the BOP Director was

permitted to lengthen the maximum amount of time a prisoner may be placed in home

confinement, in certain circumstances and during a specified period of time after the declaration

of national emergency due to Covid 19, if the Attorney General found that emergency conditions

would materially affect the functioning of the BOP.  CARES Act, Pub. L. 116-136, §

12003(b)(2).[10]

On April 3, 2020, Attorney General William Barr made this finding and gave the Director

authority to exercise this discretion. The Director was directed to "immediately review all

inmates who have COVID-19 risk factors, as established by the CDC, starting with the inmates

incarcerated at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated facilities where

you determine that COVID-19 is materially affecting operations." Memorandum from Attorney

---

[10] "Home Confinement Authority.  During the covered emergency period, if the Attorney
General finds that emergency conditions will materially affect the functioning of the Bureau, the
Director of the Bureau may lengthen the maximum amount of time for which the Director is
authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)

11

General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at

Institutions Most Affected by COVID-19 (April 3, 2020),

https://www.justice.gov/file/1266661/download

However, the CARES Act did not give the Court authority to direct the BOP to consider

release to home confinement or direct the BOP to place a defendant in home confinement for the

remainder of the sentence.  Under 18 U.S.C. § 3621(b), the BOP "shall designate the place of the

prisoner's confinement".

**DONE** and **ORDERED** this 26th day of August 2020.

**s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

of title 18, United States Code, as the Director determines appropriate." CARES Act, P.L. 116-136, § 12003(b)(2) (2020).